UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Melvina Hawkins,

                    Plaintiff,

        -against-

Sandra Hagler, Domalosa Inc. d/b/a Iris
Farms, James McCarl, The Law Firm of
James R. McCarl and Associates,

                    Defendants.
------------------------------------------------------------X

21-cv-8404

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

      Plaintiff filed this action on October 12, 2021, alleging claims against Defendant for violating the Fair Labor Standards Act (hereinafter "FLSA") and New York Labor Law (hereinafter "NYLL") based on failure to pay overtime wages and failure to provide wage statements and payroll notices (ECF No. 1). Before the Court is the parties' application to approve their settlement agreement in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (ECF No. 93). For the reasons below, the Court **APPROVES** the settlement agreement.[1]

**DISCUSSION**

      In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent

---

[1] The parties have consented to the Court's jurisdiction under 28 U.S.C. §636(c). (ECF No. 66).

the approval of the district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020). Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable. *See, e.g., Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021). In doing so, district courts consider the "totality of circumstances," including the following factors: (1) plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement results from arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Fisher*, 948 F.3d at 600 (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In addition, the following factors "weigh against approving a settlement": (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. *Wolinsky*, 900 F. Supp. 2d at 336. "The ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights

brought about by an employer's overreaching." *Id.* (internal quotations omitted). "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Xiao v. Grand Sichuan Int'l St. Marks, Inc.*, No. 14-cv-9063, No. 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submissions in support of the proposed settlement and having considered the totality of the circumstances, the Court finds that the parties' settlement agreement is fair and reasonable.

All five *Wolinsky* factors favor approval. First, the settlement agreement provides for a total settlement payment of $22,500, with $10,769.20 payable to Plaintiff and $11,730.80 payable to counsel, with $9000 in attorney's fees and $2730.80 in expenses. (ECF No. 73-1 at 2). Plaintiff estimates her total damages in this case to be about $30,517.79 with full recovery of unpaid wages. The proposed settlement amount thus constitutes over 70 percent of Plaintiff's maximum total recovery. And even after accounting for attorney's fees and expenses, Plaintiff will still receive about 35 percent of her total estimated damages. This recovery percentage is well within the range of recovery amounts approved by courts in other FLSA cases in this District. *See, e.g., Soto v. Triumph Constr. Corp.,* No. 21-CV-2449 (VSB), 2023 WL 3483753, at *3 (S.D.N.Y. Apr. 26, 2023) (approving settlement amount to Plaintiff that "still represents approximately 15% of the total possible recovery"); *Castillo Carbajal v. K&P Facilities Maint. Inc.,* No. 23-CV-269 (AEK),

2023 WL 4134325, at *2 (S.D.N.Y. June 22, 2023) (approving settlement amount where each Plaintiff received approximately 30% of the maximum potential individual recovery for each Plaintiff"); *Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-CV-9632(AJN), 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (approving settlement where plaintiff received "20 per cent of the total possible" amount recoverable at trial); *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff received "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range") (collecting cases).

Second, the settlement will enable the parties to avoid many other expenses and burdens associated with establishing their claims and defenses. Although the parties already completed discovery, they were preparing for trial. This settlement will allow them to avoid significant expenses related to further trial preparation and the trial itself. *See Perez*, 2022 WL 14757824, at *3 (finding that the proposed settlement would allow parties "to avoid the expense of discovery as well as the expense of motion practice and trial").

Third, both parties would have faced litigation risks if this case had proceeded to trial. The parties hotly dispute whether Plaintiff worked overtime hours and whether she was properly compensated for them. (ECF No. 1 at 4-7; ECF Nos. 8, 9). And Defendants deny Plaintiff's allegations altogether. (ECF Nos. 8, 9.)

As Plaintiff's counsel acknowledges, for Plaintiff "there is an inherent risk of going to trial and being unable to establish any liability because of the fact-intensive nature of proving liability under the FLSA, and in light of the defenses available to Defendants." (ECF No. 73 at 3). And Defendants recognize "that exemptions and other defenses are not broadly construed in [their] favor" and that the settlement "avoid[s] further costs and investment of additional time in a litigation in which the risk of an adverse outcome is theoretically possible." (*Id.* at 3-4).

As to the fourth and fifth factors, the Court has no reason to believe that the proposed settlement is not the product of arm's-length bargaining between experienced counsel or that the agreement stems from fraud or collusion. As counsel acknowledges, settlement negotiations occurred "after lengthy legal disputes in New York State Supreme Court, and involved the exchange of multiple demands and counteroffers." (*Id.* at 4). Indeed, this settlement agreement was initially brokered by—and then negotiated through—a settlement conference with the Court, just a few months before the parties were poised to go to trial. (ECF No. 02/28/2025 (Minute Entry)).

Moreover, none of the *Wolinsky* factors that weigh against approving a settlement exist here.  This case involves only an individual Plaintiff, the settlement agreement affects only this Plaintiff, and the Court is unaware of other employees who are similarly situated to this Plaintiff.  Given that the employment relationship between Plaintiff and Defendant has ended, there is no likelihood that the circumstances that gave rise to this lawsuit will recur.  (ECF No. 1 at ¶ 13

(Comp.), alleging that Plaintiff's employment ended in 2020).  The Court is also unaware of a history of FLSA non-compliance by this employer, and the complaint does not appear to raise novel factual or legal issues that would further the development of law in this area.

In addition, the proposed settlement agreement has no problematic provisions that would preclude court approval.  There are no confidentiality or non-disparagement provisions in the proposed agreement, and the release provision appropriately limits itself to the wage and hour claims asserted here and related claims that could have been asserted.  (ECF No. 73-1 at 3); *see also Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016); *Illescas v. Four Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021).

As for attorney's fees and costs, the proposed settlement provides Plaintiff's counsel with $9,000 in attorney's fees and $2,730.80 in costs. After deducting expenses, attorney's fees constitute about 40 percent of the total settlement amount. (ECF No. 93 at 4).  "Neither the text nor purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorney's fees." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020). Indeed, "there is no explicit limit on attorneys' fees in FLSA actions, and district courts should not, in effect and practice, implement such a limit." *Id.*  (citing *City of Riverside v. Rivera,* 477 U.S. 561, 578 (1986)).  Instead, the Second Circuit has explained that when "presented with a settlement for approval, a district court's options are to (1) accept the

proposed settlement [after finding it to be reasonable]; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." (*Id.* at 606).

Even so, courts in this Circuit do not typically award fees more than one-third of the total settlement amount in an FLSA action, unless there are "special circumstances that might justify a fee exceeding the presumptive one-third ceiling." *Minter v. Hess Corp.*, No. 22-CV-1538 (VSB), 2024 WL 4604533, at *2 (S.D.N.Y. Oct. 28, 2024); *Huang v. Sunstone Pathology Servs. P.C.*, No. 2:23-CV-05420-JMW, 2024 WL 4904160, at *7 (E.D.N.Y. Nov. 27, 2024) (finding that a court may approve attorney's fees of more than one-third the settlement amount where unusual circumstances exist). Although a close call, the Court finds such special circumstances here. Unlike other straight-forward FLSA cases that settle before much discovery is done or any motion practice takes place, this case is a long-running one that was "hotly contested" over several years, first in New York state court and then here. (ECF No. 73 at 9; *see also* ECF No. 58 at 2 (referring to initial lawsuit in Orange County Supreme Court involving discovery and motion practice)). As substantiated by contemporaneous records filed with this motion, Plaintiff's counsel spent over 163 hours among various personnel litigating this case, including discovery, motion practice, and pretrial submissions. (ECF No. 73-5). That motion and pretrial practice included a motion to compel (ECF Nos. 30, 31), a motion for summary judgment (which the Court denied in part) (ECF No. 06/18/2024 (Minute Entry)), and numerous pre-trial submissions (Request to Charge, Voir Dire

Questions, Jury Instructions, etc.) filed with the Court in preparation for trial. (ECF Nos. 60-63). Indeed, this Court set a trial date for May 5, 2025, which would have proceeded if not for this settlement. Per the parties' submissions, it appears they completed a fair amount of fact discovery, including multiple depositions and document exchanges. (*See, e.g.,* ECF Nos. 44-1 – 44-4; 49-4 – 49-5). And, as noted above, the settlement in this case awards Plaintiff approximately 70% of their total recoverable damages, well exceeding what is ordinarily accomplished in this Circuit for these cases. *Khan v. Young Adult Inst., Inc.*, No. 18 CIV. 2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of reasonable FLSA settlements ranging from 25% to 40% of plaintiff's maximum recovery). Thus, this Court finds that special circumstances exist here so as to justify the attorney's fees requested.

Typically, "courts in this Circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Santos*, 2021 WL 431451, at *2 (cleaned up). Here, that cross check further supports the Court's finding that the attorney's fees are reasonable despite being more than the presumptive one-third ceiling. Plaintiff's counsel has submitted contemporaneous time records to support the fee application.[2] (ECF Nos. 73-4; 73-5; 73-6). Applying the lodestar method, Plaintiff's counsel explains that they have years of experience litigating FLSA cases

---

[2] The Second Circuit has said that adequate documentation must be provided in support of a request for attorney's fees. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). Indeed, "[a]ll applications for attorney's fees ... should normally be disallowed unless accompanied by contemporaneous time records indicating for each attorney the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).

and that they worked 163.49 hours among four attorneys at hourly rates between $125 to $450, which would yield a total lodestar fee of $47,332.25.[3] (ECF No. 73 at 4). The proposed fee minus costs ($9,000) represents about 19 percent of the lodestar amount ($47,332.25), which is fair and reasonable given these facts. *See Fuentes v. Highgate Cleaners Inc.*, No. 20-cv-3925 (OTW), 2022 WL 14717835, at *2 (S.D.N.Y. Oct. 25, 2022) (finding attorney's fees award reasonable where it is "less than [p]laintiff's counsel's stated lodestar"); *Gervacio,* 2019 WL 330631, at *3 ("The true lodestar amount is [ ] greater than the fee award contained in the settlement agreement. As a result, the Court does not disturb the calculation of attorneys' fees…").

Plaintiff's counsel also asserts $2,730.80 of costs in their motion – consisting of a $402.50 filing fee, a $1,000 fee without a description, a $225 service of process fee, one $504.65 charge and one $565.21 charge in court reporter costs and expenses, and $33.44 in sending a letter to the judge. (ECF No. 73-6). Counsel did not separately submit extrinsic proof or a declaration confirming that these amounts were expended. Even so, the Court grants this fee request, provided that Plaintiff's counsel submits a declaration within one week of this Order affirming that these itemized costs and expenses were expended and detailing the $1,000 fee incurred on October 12, 2021. *See, e.g., Cortes*, 2016 WL 3455383, at *6 ("Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which

---

[3] Because the Court finds the requested fee to be reasonable, it will not separately address whether the rate and number of hours expended on this case, as reflected in Plaintiff's counsel's billing records, are themselves reasonable.

a claimant provides extrinsic proof, such as invoices or receipts. A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient.") (citations omitted).

## CONCLUSION

For the reasons stated above, the Court finds the proposed settlement to be fair and reasonable, and the settlement agreement as filed at ECF No. 73-1 is **APPROVED**. Plaintiff will receive a total of $22,500, with $10,769.20 payable to Plaintiff and $11,730.80 (consisting of $9,000 in fees and $2,730.80 in costs) payable to Plaintiff's counsel. But the Court directs Plaintiff's counsel to submit a declaration within one week of this Order affirming the expenditure of the itemized costs above.

According to section "C" of the parties' settlement agreement, the Court directs Plaintiff's counsel to submit a Stipulation of Discontinuance once full and complete payment is received and cleared by Plaintiff and his counsel.

**SO ORDERED.**

DATED:   White Plains, New York
         April 7, 2025

_____
VICTORIA REZNIK
United States Magistrate Judge